830 So.2d 392 (2002)
Rodney L. DIXON, Plaintiff-Respondent,
v.
GENE MOODY TRUCKING, INC., et al., Defendants-Applicants.
No. 36,420-CW.
Court of Appeal of Louisiana, Second Circuit.
October 23, 2002.
Cook, Yancey, King & Galloway by Sidney E. Cook, Jr., William P. Buckley, Rebecca L. Lear, Shreveport, for Defendant Applicant Liberty Mutual Ins. Co.
Stockwell, Sievert, Viccellio, Clements & Shaddock by Andrew D. McGlathery, III, Lake Charles, for Plaintiff Respondent Rodney L. Dixon.
Mayer, Smith & Roberts by Caldwell Roberts, Jr., Shreveport, for Intervenor Respondent United Parcel Service, Inc.
Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell by Joseph S. Woodley, Shreveport, for Defendant Respondent St. Paul Fire & Marine Ins. Co.
Stafford, Stewart & Potter by Russell L. Potter, Andrew P. Texada, Alexandria, for Defendant Respondent Geico General Ins. Co.
Lunn, Irion, Salley, Carlisle & Gardner by William Orie Hunter, III, James A. Mijalis, Jr., Shreveport, for Defendants Respondents Clarendon National Ins. Co., *393 Gene Moody Trucking Inc. and Kevin K. Taylor.
Before STEWART, GASKINS and HARRISON (Pro Tempore), JJ.
STEWART, J.
We granted a writ application by Liberty Mutual Insurance Company, ("Liberty Mutual"), to review the denial of a motion for summary judgment pertaining to an apparent waiver of uninsured/underinsured motorist bodily injury ("UMBI") coverage by the insured, United Parcel Service, Inc., ("UPS"). Because we find there to be no genuine issue of material fact as to the validity of the waiver, we reverse the trial court's judgment, grant summary judgment in favor of Liberty Mutual, and dismiss the claims of the plaintiff, Rodney Dixon, against Liberty Mutual.

FACTS
This case arose from an automobile accident that occurred on November 3, 1999. Rodney Dixon was driving a UPS van when he was violently rear-ended by a tractor-trailer truck driven by Kevin Taylor and owned by Gene Moody Trucking Co., Inc. Subsequently, Dixon brought suit against Taylor, Gene Moody Trucking, and its insurer, Clarendon National Insurance Company. Dixon later supplemented his petition by adding Liberty Mutual as a defendant. Dixon alleged that Liberty Mutual provided liability insurance covering the UPS vehicle driven by him at the time of the accident, that Policy No. AS2-C25-004175-339 included UMBI coverage for UPS, and that the policy was in full force and effect at the time of the accident. Dixon also added GEICO Insurance Company, his own insurer, as a defendant.
In answer to Dixon's petition, Liberty Mutual generally denied all allegations. Liberty Mutual then filed a motion for summary judgment contending that UPS had properly executed a valid waiver of UMBI coverage. In support of its motion, Liberty Mutual offered two affidavits and a copy of the "Uninsured/Underinsured Motorist Bodily Injury Coverage Form" on which a check mark is placed at Option 5 which states, "I do not want UMBI coverage." The form is dated "1-4-99." The same initials appear both in the blank next to Option 5 and above the signature line. There is also a signature on the signature line. Although the signature does not correspond to the initials, this discrepancy was explained in affidavits, which were also submitted by Liberty Mutual in support of its motion and to which the UMBI form was attached. In an affidavit, Tony Gavin, a manager in UPS's risk management department, averred that he had actual authority to waive UMBI coverage on behalf of UPS. Gavin averred that he reviewed the UMBI form at the request of Robert Markmann, a vice president in the risk management department, and initialed Option 5 to reject UMBI coverage and also placed his initials on the signature line. In another affidavit, Robert Markmann averred that he had actual authority to reject UMBI coverage on behalf of UPS, and that he instructed Gavin to review the form and to initial where appropriate to reject UMBI coverage. Markmann averred further that he signed the UMBI form at the space designated along the bottom for the signature of UPS's legal representative and that it was the desire of UPS by executing this form to reject UMBI coverage for Policy No. AS2-C25-004175-339.
In opposing Liberty Mutual's motion for summary judgment, Dixon argued that the form was not "properly completed" because Markmann, who signed the form as the legal representative of UPS, was not the individual who initialed the UMBI *394 rejection blank at Option 5. Dixon also argued that there remained questions as to whether Liberty Mutual did anything to verify the validity of the rejection of UMBI coverage by UPS. GEICO also opposed Liberty Mutual's motion for summary judgment. GEICO argued that the form used by Liberty Mutual did not appear to be the form prescribed by the Louisiana Commissioner of Insurance. GEICO also questioned the validity of the wavier due to Liberty Mutual's failure to establish the policy period and show whether there had been any changes in the policy between January 4, 1999, the date of the waiver, and the date of the accident, which might have required the execution of a new waiver. Neither Dixon nor GEICO submitted any affidavits or other documentation in support of their oppositions to Liberty Mutual's motion.
The trial court denied Liberty Mutual's motion for summary judgment upon determining that material issues of fact remained as to the form of the rejection by UPS and the validity of the rejection at the time the accident occurred. From this adverse ruling, Liberty Mutual sought supervisory review, which was granted.

DISCUSSION
The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law. La. C.C.P. art. 966(A)(2); Independent Fire Ins. Co. v. Sunbeam Corp., 99-2257, 99-2181 (La.2/29/00), 755 So.2d 226. Appellate courts conduct a de novo review of a summary judgment under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Franklin v. Coleman, 34,908 (La.App.2d Cir.8/22/01), 793 So.2d 467. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). A fact is material if its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Curtis v. Curtis, 28,698 (La.App.2d Cir.9/25/96), 680 So.2d 1327; Franklin v. Coleman, supra.
Where the validity of a rejection of uninsured motorist coverage is at issue, the insurer bears the burden of proving that the insured rejected such coverage in writing or selected lower limits. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992); Franklin v. Coleman, supra. Once the insurer has shown that a rejection form is valid, the burden shifts to the insured to prove otherwise. Franklin v. Coleman, supra. In accordance with these principles and La.C.C.P. art. 966, the initial burden was on Liberty Mutual to show that UPS, the insured, executed a valid rejection of UMBI coverage. No affidavits or other documentation was offered in opposition to Liberty Mutual's motion, instead both Dixon and GEICO argue that Liberty Mutual did not meet its burden of proving a valid rejection of UMBI coverage by UPS and that genuine issues of material fact remain.
To determine whether Liberty Mutual met its burden, we must first examine the applicable substantive law governing UMBI coverage. Louisiana law requires each automobile liability policy to include UMBI coverage in an amount not less than the limits of bodily injury liability coverage provided by the policy. La. R.S. 22:1406(D)(1)(a)(i); Jones v. Jones, 36,040 (La.App.2d Cir.5/8/02), 817 So.2d 454, writ denied, 02-1612 (La.9/30/02), 825 So.2d 1197; Hobson v. King, 35,743 (La.App.2d *395 Cir.2/27/02), 812 So.2d 776, writ denied, 02-0828 (La.5/24/02), 816 So.2d 851. However, this coverage is not required "when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage." La. R.S. 22:1406(D)(1)(a)(i). Regarding the rejection of coverage or selection of lower limits or economic-only coverage, the statute further states in pertinent part:
(ii) After September 1, 1987, such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.
La. R.S. 22:1406(D)(1)(a)(ii).
Considering that the object of the uninsured motorist legislation is to promote full recovery for automobile accident victims by making such coverage available for them, jurisprudence has held that the UM statute is to be liberally construed, with the exceptions to coverage interpreted strictly. Franklin v. Coleman, supra; Tugwell, supra; Nelson v. Ragan, 26,724 (La.App.2d Cir.4/5/95), 653 So.2d 185, writ denied, 95-1161 (La.6/16/95), 655 So.2d 332. Any exclusion from coverage must be clear and unmistakable. Franklin v. Coleman, supra.
In its motion for summary judgment, Liberty Mutual asserted that UPS had executed a valid waiver of UMBI coverage. Liberty Mutual offered the UMBI form along with affidavits from the two UPS employees who completed the form on behalf of UPS. In opposition to the motion for summary judgment, Dixon and GEICO argued that the form submitted by Liberty Mutual did not appear to be the form prescribed by the commissioner of insurance as required by La. R.S. 22:1406(D)(1)(a)(ii). We find no merit in this argument. At the top of the Liberty Mutual UMBI form is written, "This form was promulgated pursuant to LRS 22:1406D(1)(a)(ii)." This statutory provision requires the use of the UMBI form prescribed by the commissioner of insurance. Neither GEICO nor Dixon provide any basis for the assertion that the form used by Liberty Mutual is not the form prescribed by the commissioner of insurance. In fact, this court in Hobson v. King, supra, addressed the validity of a form alleged to be an altered version of that prescribed by the commissioner of insurance. We examined the form promulgated by the commissioner of insurance on April 28, 1998, in La. Bulletin LIRC 98-01 and attached a copy to the opinion. That form is identical to the form used by Liberty Mutual. We find no genuine issue of material fact as to whether the Liberty Mutual form is the form prescribed by the commissioner of insurance.
The Liberty Mutual form provided five coverage options: (1) selection of UMBI coverage; (2) selection of UMBI coverage at limits lower than those of the bodily injury liability coverage; (3) selection of economic-only UMBI coverage; (4) selection of economic-only UMBI coverage at limits lower than those of bodily injury liability coverage; and (5) rejection of UMBI coverage. The fifth option providing for rejection of UMBI coverage was chosen as evidenced by a check in the blank next to that option, initials next to *396 the check, and a signature in the blank designated for the signature of a legal representative of the insured at the bottom of the form. In an affidavit, Tony Gavin, a manager in UPS's risk management department, averred that he had actual authority to execute waivers of UMBI coverage on behalf of UPS. Gavin further averred that on January 4, 1999, he reviewed the UMBI form at the request of Robert Markmann, a vice president in the risk management department, and he initialed both the fifth option to reject UMBI coverage in policy number AS2-C25-004175-339 issued by Liberty Mutual and the bottom of the form where designated for the signature of the legal representative. In his own affidavit, Robert Markmann averred that he also had actual authority to reject UMBI coverage on behalf of UPS and that he provided the UMBI form for policy number AS2-C25-004175-339 to Gavin to review the form and place his initials where appropriate to reject UMBI coverage. Markmann then signed the bottom of the UMBI form at the space designated for the signature of the legal representative to signify the rejection of UMBI coverage by UPS.
This evidence put forth by Liberty Mutual in support of its motion for summary judgment establishes an apparently valid rejection of UMBI coverage in Liberty Mutual policy number AS2-C25-004175-339 by the insured, UPS, through its employees, whose sworn affidavits indicate that they were authorized to reject UMBI coverage on behalf of UPS. Upon Liberty Mutual establishing a prima facie showing that its motion should be granted, the burden then shifted to Dixon and GEICO, the nonmoving parties, to present evidence demonstrating that material facts remain. See Berzas v. OXY USA, Inc., 29,835 (La. App.2d Cir.9/24/97), 699 So.2d 1149;
Hayes v. Autin, 96-287 (La.App. 3d Cir.12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41. As stated in La. C.C.P. art. 967, when a motion for summary judgment is made and properly supported, the non-moving party "may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial." If the nonmoving party fails to respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967.
Neither Dixon nor GEICO responded with countervailing affidavits or other evidence to set forth specific facts showing a genuine issue for trial. Instead, the non-movants argue that the UMBI form presented by Liberty Mutual was not "properly completed" due to the discrepancy created by Gavin having initialed the rejection option and Markmann having signed as the legal representative of UPS. The non-movants argue that this discrepancy creates questions as to whether Gavin had authority to reject UMBI coverage and whether Liberty Mutual took any steps to verify that the rejection of UMBI coverage by UPS was valid. They also argue that UPS's rejection of UMBI coverage was made in contravention of the specific directions on the form which states "The choice I made by my initials on this form will apply to all persons insured under my policy." Finally, they argue that Liberty Mutual failed to establish that there had been no changes in the policy between the date of the UMBI rejection, January 4, 1999, and the date of the accident, November 3, 1999, which would have necessitated the execution of a new UMBI form.
The arguments regarding Gavin's alleged lack of authority to reject UMBI coverage on behalf of UPS, the failure of Liberty Mutual to verify the validity of the rejection, and the possibility of policy changes which would have required a new UMBI form are all conjecture and speculation *397 on the part of Dixon and GEICO which are unsupported by affidavits or other evidence setting forth specific facts showing a genuine issue for trial. Accordingly, these provide no basis for a denial of Liberty Mutual's summary judgment motion, which was supported as provided by law and proved a valid rejection UMBI coverage by UPS.
For the argument that the UMBI rejection form was not properly completed, the non-movants refer to Spera v. Lyndon Property Ins. Co., XXXX-XXXX, (La.App. 3d Cir.3/7/01), 788 So.2d 56, writ denied, 01-0874 (La.6/1/01), 793 So.2d 193, which held that "properly completed," as used in La. R.S. 22:1406 in reference to the rebuttable presumption that the insured knowingly rejected coverage or selected either lower limits or economic-only coverage, means "that every relevant blank on the form must be addressed." In Spera, supra, the effective date, the name of the insurance company, and the policy number were left blank on the UMBI form. In the case sub judice, every relevant blank on the form was addressed. The blank for the rejection of UMBI coverage was addressed with the placement of a checkmark in the blank along with the initials of Tony Gavin. The name of the insured, UPS, was typed into the relevant blank above the signature of a legal representative of the insured. The form also included the policy number and the date. As such, Spera is factually distinguishable from the instant case.
We find no merit to the argument that the placement of Gavin's initials in the blank next to the option for the rejection of UMBI coverage and the signature of Markmann as the legal representative was in contravention of the instructions on the form and thus did not effect a properly completed form. Both Gavin and Markmann averred in sworn affidavits that they had actual authority to reject UMBI coverage. As provided in Henson v. Safeco Ins. Companies, 585 So.2d 534 (La.1991), it is "the rejection of UM coverage, and not the acceptance, that must be the affirmative act of the insured." The affidavits of Gavin and Markmann indicate that each reviewed the form and that each performed an affirmative act to reject UMBI coverage on behalf UPS.
In Bonnette v. Robles, 32,191 (La.App.2d Cir.8/18/99), 740 So.2d 261, this court affirmed a summary judgment in favor of the insurer even though the UMBI form did not make reference to the policy. The panel concluded that there was no legal requirement that the form make reference to the policy because the form becomes part of the policy by operation of law. In Franklin v. Coleman, supra, this court found there was no statutory requirement that a rejection form state a date or refer to the policy number in order to effect a valid rejection. Finally, this court noted in Jones v. Jones, supra, the absence of any "express or implied requirement" in La. R.S. 22:1406 that the policy number be included on the form prescribed by the commissioner of insurance. In these cases, it was the statutory requirements of La. R.S. 22:1406 which governed the validity of the rejection of UMBI coverage.
In accordance with the reasoning of these cases, we find no statutory requirement which would invalidate the rejection of UMBI coverage by UPS in this instance. La. R.S.22:1406(D)(1)(a)(i) requires the form prescribed by the commissioner of insurance to be "provided by the insurer and signed by the named insured or his legal representative." (Emphasis added.) The rejection of UMBI coverage in this instance was made on a form prescribed by the commissioner of insurance and signed by a legal representative of the insured as required by La. R.S. 22:1406(D)(1)(a)(i). All relevant blanks on *398 the form were addressed. Accordingly, the rejection of UMBI coverage by UPS meets statutory and jurisprudential requirements for a valid rejection.
In light of our foregoing discussion, we find no genuine issues of material fact as to the validity of the rejection of UMBI coverage by UPS and conclude that the trial court erred in finding otherwise. UPS executed a valid rejection of UMBI coverage, and Liberty Mutual's motion for summary judgment is hereby granted.

CONCLUSION
For the reasons stated, the judgment of the trial court denying the motion for summary judgment by Liberty Mutual Insurance Company is reversed, the motion for summary judgment is hereby granted, and the claims of Rodney Dixon against Liberty Mutual Insurance Company are dismissed. Costs are assessed to appellees, Rodney Dixon and GEICO Insurance Company.
REVERSED and RENDERED.